UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


BRENDA LANDON

                                        CIVIL ACTION

VERSUS

                                        NUMBER 13-261-SCR

PHILIP A. PADGETT, M.D., ET AL.


## RULING ON MOTION FOR SUMMARY JUDGMENT

Before the court is the West Baton Rouge Parish Council's Motion for Summary Judgment.  Record document number 21.    The motion is opposed.[1]

Careful consideration of the record and the parties' arguments supports finding that under the Age Discrimination in Employment Act there is no genuine dispute for trial on the issue of whether defendant West Baton Rouge Parish Council had an employment relationship with plaintiff Brenda Landon.[2]  It did not.  As to the plaintiff's Louisiana Employment Discrimination Law claim, the result is different.


## Background

Plaintiff Brenda Landon filed a Complaint against defendants the West Baton Rouge Parish Council, and the Parish of West Baton

---

[1] Record document number 23.

[2] Defendant WBRP did not argue that it did not meet the statutory requirement of "twenty or more employees."

Rouge (which are considered as the same entity for the purpose of this case and are referred to hereafter as "WBRP"), and Philip A. Padgett, M.D., who is the West Baton Rouge Parish Coroner (sometimes referred to in the parties' memoranda as the "Coroner's Office" and referred to hereafter as the "Coroner").[3]  Plaintiff alleged claims of discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq*, and "Louisiana's anti-discrimination laws."[4]  Plaintiff alleged that she was employed by the West Baton Rouge Parish Coroner and was subject to offensive harassment based on her age beginning in 2007. Plaintiff alleged that after reporting the illegal conduct she continued to be subject to a hostile work environment and was ultimately wrongfully terminated on September 27, 2011.

Defendant moved for summary judgment based on the argument that it is not the plaintiff's employer, and therefore is not subject to the requirements of the ADEA and the LEDL.  Defendant WBRP asserted that the Coroner is not an employee or agent of WBRP, but rather an elected official under the Louisiana State

---

[3] In a ruling issued on October 4, 2013, the federal and state law discrimination claims against the Coroner were dismissed on summary judgment (hereafter, the "Coroner Ruling").  The Coroner argued that he did not satisfy the 20 or more employees requirement under the ADEA and LEDL.  Plaintiff failed to come forward with evidence to create a genuine dispute for trial on this threshold issue.  Record document number 22.

[4] Record document number 1, Complaint, Jurisdiction statement and ¶ 18.  It is assumed that the plaintiff is relying on the Louisiana Employment Discrimination Law, LSA-R.S. 23:312 ("LEDL").

Constitution whose office is a state agency which operates independently of regulation by the local governing authority. Defendant WBRP also provided evidence to establish that it does not exercise the requisite control over the employees of the Coroner necessary for WBRP to be held accountable as the plaintiff's employer.[5]   WBRP argued that even though the Coroner receives annual appropriations from WBRP to pay his employees and other necessary expenses, it is not their employer under the ADEA and the LEDL.

Plaintiff opposed the motion. Plaintiff essentially argued that her affidavit and supporting documents and other evidence establish that her employee compensation and benefits are administered and controlled by WBRP.[6]  Therefore, plaintiff argued, this fiscal relationship between WBRP and the Coroner shows that there is a genuine dispute for trial on the issue of whether WBRP is her employer or joint employer within the meaning of the ADEA and the LEDL.

---

[5] Record document number 21-3, Exhibit A, Declaration of Riley Berthelot, Jr.  Berthelot is the West Baton Rouge Parish President. Defendant WBRP also relied on the affidavit of Yancy Guerin (with attachments) submitted in support of the motion filed by defendant Philip A. Padgett, M.D. (record document number 13-3).  Guerin is the Chief Investigator and Chief of Operations for the Coroner. Defendant also cited some portions of the plaintiff's Affidavit. Record document number 19-2, Exhibit 1.

[6] Record document 19-2, Exhibit 1, plaintiff's Affidavit with 2010 and 2011 time sheets attached.

3

## Applicable Law

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56(a), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor.  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.  The court may not make credibility findings, weigh the evidence or resolve factual disputes.  *Id.; International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059, 112 S. Ct. 936 (1992).

The substantive law dictates which facts are material. *Littlefield v. Forney Independent School Dist.*, 268 F.3d 275, 282

4

(5th Cir. 2001).  The threshold issue in this case is whether an employment relationship exists between the plaintiff and defendant WBRP, within the meaning of the ADEA and the LEDL.

Under the ADEA the term "employer" is defined as follows:

[A] person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year: *Provided*, That prior to June 30, 1968, employers having fewer than fifty employees shall not be considered employers.  The term also means (1) any agent of such a person and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, that such term does not include the United States or a corporation wholly owned by the Government of the United States.

29 U.S.C. § 630(b).

Determining whether a defendant is an employer under the ADEA involves finding: (1) the defendant falls within the statutory definition and (2) the existence of an employment relationship between the plaintiff and the defendant.  *Deal v. State Farm County Mut. Ins. Co. of Texas*, 5 F.3d 117, 118 (5th Cir. 1993), *citing*, *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990).

The Fifth Circuit uses the the "hybrid economic realities/common law control test" to determine whether an employee-employer relationship exists under the ADEA.  Under this test the most important factor is the right to exercise control over an employee's conduct.  *Deal*, 5 F.3d at 119.  The focus for determining the existence of control has been on the alleged

5

employer's right to hire and fire the employee, supervise the employee, and set the employee's work schedule. *Id*. The economic realities component of the test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment. *Id*.

In decisions addressing the employee-employer relationship when the case involves governmental entities, the Fifth Circuit has stated that the single or joint employer theory is not applicable when the defendants are governmental subdivisions. *See*, *Dumas v. Town of Mount Vernon*, 612 So.2d 974, 980, n. 9 (5th Cir. 1980); *Trevino v. Celanese Corporation*, 701 F.2d 397, 404 n. 10 (5th Cir. 1983); *Karagounis v. university of Texas Health Science Center at San Antonio*, 168 F.3d 485 (5th Cir. 1999)(per curiam)(unpublished); *Garrett-Woodberry v. Mississippi Board of Pharmacy*, 300 Fed.Appx. 289 (5th Cir. 2008)(unpublished).[7]

Under the LEDL, the term "employer" is defined as follows:

> "Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

---

[7] *But see*, *Patterson v. Yazoo City Mississippi*, 847 F.Supp.2d 924, 932-40 (S.D. Miss. 2012)(finding no apparent reason why they should be treated differently from private employers in employment discrimination suits, and applying single employer test to government entities).

LSA-R.S. § 23:302(2).

In contrast to federal law, Louisiana's definition of employer focuses on which entity pays the employee. There is no corresponding Louisiana jurisprudence holding that Louisiana's focus, when determining employer status, is the issue of control, as it is under the federal scheme. *Dejoie v. Medley,* 9 So.3d 826, 830 (La. 2009). Federal courts applying Louisiana law and Louisiana state courts have consistently held that the definition of "employer" under Louisiana law, for the purpose of employment discrimination cases, has been specifically defined. To satisfy the definition of "employer" under Louisiana law, the entity must: 1)receive services from an employee; (2) in return give compensation to that employee; and, 3) must meet the requirement of a minimum number of employees (currently 20 or more). *Id.; Duplessis v. Warren Petroleum, Inc.*, 672 So.2d 1019 (La.App. 4th Cir. 1996); *Onyeanusi v. Times-Picayune Publishing Corp.*, 485 So.2d 622 (La.App. 4th Cir. 1986); *Johnson v. Hospital Corp. of America*, 767 F.Supp.2d 678, 693 (W.D.La. 2011); *Griffith v. City of New Orleans*, 2013 WL 2555787 (E.D. La. June 10, 2013); *Dupre v. Westlawn Cemeteries*, 2013 WL 3730125 (E.D. La. July 12, 2013); *Seal v. Gateway Companies, Inc.*, 2002 WL 10456 (E.D.La. 2002); *Hornsby v. Enterprise Transportation Co.*, 987 F.Supp. 512, 515 (M.D.La. 1997)(interpreting La.Rev.Stat. § 23:1006, previous provision); *Langley v. Pinkerton's Inc.*, 220 F.Supp.2d 575 (M.D.La. 2002).

In determining whether an employer gives compensation, factors to consider include: (1) who paid the employee's wages; (2) who withheld federal, state, unemployment, or social security taxes; (3) whether the employee's name appeared on the employer's payroll; and, (4) whether the employee participated in the employer's benefit plans. Central to the determination of whether a defendant is an employer for purposes of the LEDL is whether the defendant paid the plaintiffs wages and withheld federal, state, unemployment, or social security taxes. Moreover, for purposes of the LEDL the source of the funds used to compensate the employee is crucial to determining whether the alleged employer gave the plaintiff compensation. *Dejoie*, 9 So.3d at 831; *Griffith, supra; Dupre, supra.*

## Analysis

### ADEA Claim

Under the hybrid economic realities/common law control test, the most important factor is the right to exercise control over the employee, i.e., the right to hire and fire, supervise, set the work schedule, and make the final decisions regarding the employment matters involved in the plaintiff's claims. The record contains the following facts relevant to these issues and they are undisputed by the plaintiff.

Plaintiff was hired by the Coroner as a death investigator and

to perform secretarial services.[8]  The Coroner signs the letters of hire for all new employees.  No individuals working for the Coroner, including the plaintiff, are subject to the personnel policy manual for West Baton Rouge Parish employees, including but not limited to the submission of any grievances or complaints regarding their employment to the Parish President, or to anyone under his authority and control.  Since January 2004, neither the Parish President nor anyone under his authority and control has hired, supervised, disciplined or terminated any person working for the Coroner, or set the work schedule for or compensation for any person working for the Coroner.

Plaintiff did not offer any contradicting facts, but instead pointed to other facts related to her compensation and benefits, and other fiscal connections between the Coroner and WBRP. Plaintiff argued that the following facts are sufficient to create a genuine dispute for trial on the issue of whether WBRP was her employer or her joint employer under the ADEA.

Plaintiff completed her employment documents and authorization for direct deposit of her paycheck with the person who handled payroll/human resources at the WBRP office.  Plaintiff submitted her time sheets to the WBRP Council, which issued the plaintiff her pay check.  Thus, the plaintiff received her pay check and benefits

---

[8] On her Charge of Discrimination the plaintiff named the West Baton Rouge Coroner's Office as her employer.  Record document number 1-3, Charge of Discrimination filed January 10, 2012.

9

from the WBRP governing authority.   Monthly billing for the investigators was submitted to and paid by WBRP.   The list of annual holidays and payroll notices were also issued by the WBRP Council.

Plaintiff also provided some other facts to show the connection between the operations of the Coroner and WBRP: (1) WBRP maintenance workers remodeled the Coroner's Office; (2) bills for $100 or more required a purchase order from the WBRP office; (3) plaintiff went to the WBRP office to get a WBRP credit card to pay for supplies used at the morgue; (4) insurance cards and license plate renewals were handled through the WBRP office; (5) computer problems were reported to the WBRP office, which then did the repairs; (6) WBRP handled the Coroner's outgoing mail, and paid all of his postage, phone and bills; and, (7) the checks or cash received by the Coroner were submitted to the WBRP office for deposit.

Considering these undisputed facts as a whole in the light most favorable to the plaintiff, a reasonable trier of fact could not conclude that defendant WBRP had the right to exercise control or make the final decisions with respect to the plaintiff's employment as a death investigator/secretary for the Coroner. These are the key factors and focus of the hybrid economic realities/common law control test.   The economic-related evidence relied on by the plaintiff does not support a reasonable inference

10

that defendant WBRP shared in or influenced the hiring, firing, day-to-day supervision/work schedule, and compensation decisions related to the persons who work for the Coroner.   Although the fiscal ties between the Coroner's and defendant WBRP could support a reasonable inference that their employee payroll/financial operations are connected, these ties do not contradict or overcome the evidence of the Coroner's daily supervision and control of the plaintiff's employment, and his ultimate decision making authority over the plaintiff's employment.

As a matter of law, the plaintiff's argument that defendant WBRP can be held liable as her employer under a theory of single or joint employer must be rejected.   Moreover, even if this theory could be applied, the result would be the same.   Whether a single or joint employer analysis is used, the focus under the ADEA is on the second factor - centralized control of labor relations.   This criteria has been further refined, such that the critical determination is what entity made the final decisions regarding the employment matters related to the person alleging discrimination. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 344 (5th Cir., 2007); *Trevino*, 701 F.2d at 404.   Given the uncontested facts summarized above, a reasonable juror could not conclude that defendant WBRP made or exercised any control over the final decisions regarding the employment matters underlying the plaintiff's  discrimination claims.

In summary, under the ADEA the existence of an employment relationship is an essential element of the plaintiff's claim on which the plaintiff has failed to come forward with sufficient evidence to create a genuine dispute for trial. Therefore, defendant WBRP is entitled to summary judgment in its favor dismissing the plaintiff's claim under the ADEA.

**Supplemental Jurisdiction under 28 U.S.C. § 1367(c)**

Courts must examine their jurisdiction at every stage of the litigation. Thus, when all federal claims over which the court has original jurisdiction have been dismissed, the court should reconsider its jurisdiction over the supplemental state law claims. *Enochs v. Lampasas County*, 641 F.3d 155, 159-60 (5th Cir. 2011).

After considering certain statutory and common law factors, pursuant to 28 U.S.C. § 1367(c) a district court may decline to exercise supplemental jurisdiction over a supplemental state law claim. The statute provides the following factors: (1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the claims over which the court has original jurisdiction; (3) whether the district court has dismissed all claims over which it has original jurisdiction; or, (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction. The common

law factors as set forth in *Carnegie-Mellon*[9] include judicial economy, convenience, fairness and comity.  *Enochs*, 641 F.3d at 159.

In this case the statutory and common law factors weigh in favor of declining to continue exercising supplemental jurisdiction over the plaintiff's state law claim against WBRP.  All of the federal claims over which this court had original jurisdiction when the complaint was filed have been dismissed, based on: (1) the Coroner Ruling dismissing the plaintiff's ADEA claim against the Coroner; and, (2) the ruling in the present motion granting summary judgment dismissing the plaintiff's ADEA claim against WBRP. Plaintiff's remaining LEDL claim clearly predominates now since the federal claims are gone entirely.

Furthermore, the dismissal of all the federal claims has occurred at a relatively early point in this litigation.  The plaintiff filed her complaint just six months ago and discovery is in its early stages.[10]  The record does not show that declining to exercise supplemental jurisdiction would result in the parties having to duplicate any discovery or trial preparation if the plaintiff asserts her LEDL claim in a new state court suit.  Nor

---

[9] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343. 350. 108 S.Ct. 614 (1988).

[10] The fact discovery period does not end until March 24, 2014, and trial is not scheduled until September 29, 2014.  Record document number 17.

would it result in a significant waste of judicial resources. Since the Complaint was filed the court's efforts have been limited to entering a Scheduling Order and deciding motions on threshold issues unrelated to the merits of the plaintiff's claims.[11]

Finally, considerations of comity also weigh in favor of declining to exercise supplemental jurisdiction. While determining the existence of an employment relationship under the LEDL is generally not a novel or complex issue, in this particular case it is novel and complex. The parties did not cite, nor did the court find, any state court cases specifically addressing the joint employer issue when the defendants are a parish and a parish coroner. To determine the plaintiff's employment status under the LEDL this court would have to make findings on the relationship between these government entities without specific guidance from the state courts.

Under the LEDL the critical factors that must be considered are the source of the funds and who paid the plaintiff's wages and compensation. The summary judgment evidence shows that there are numerous fiscal connections between the Coroner and defendant WBRP, the most important of which are that the plaintiff submitted her time sheets to the WBRP Council, which issued the plaintiff her pay

---

[11] Generally, a court should decline to exercise jurisdiction over remaining state law claims when all federal law claims are eliminated at an early stage of the litigation. *Enochs,* 641 F.3d at 161, citing, *Carnegie-Mellon, supra.*

check and paid her benefits.  Plaintiff did not submit any specific evidence of the source of the funds used to pay the Coroner and the employees he hired.  However, the statements of Berthelot, and the statement of undisputed facts based on his declaration, provide evidence that: (1) WBRP provides the Coroner with a yearly appropriation for his salary and the operation of his office; and, (2) the Coroner's annual budget is included in the budget submitted by Berthelot to the WBRP for approval.

Given the lack of authoritative interpretation of the LEDL by the state courts when applied to a parish coroner and the parish as alleged joint employers, and the summary judgment evidence of the fiscal ties between the Coronor and the WBPC, in the interest of comity the interpretation of state law in this context is better left to the state courts.[12]

Based on the above analysis, the court declines to exercise supplemental jurisdiction over the plaintiff's state law claim under the LEDL against defendant WBRP.

## Conclusion

Plaintiff has failed to come forward with evidence sufficient to establish that there is a genuine issue to be tried on the

---

[12] The Supreme Court has for nearly half a century cautioned federal courts to avoid "needless decisions of state law." *Enochs*, 641 F.3d at 161, citing, *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130 (1966).

question of whether defendant WBRP is her employer under the ADEA. Therefore, WBRP is entitled to summary judgment as a matter of law dismissing the plaintiff's ADEA claim.

In the circumstances of this case, continuing to exercise supplemental jurisdiction over the remaining state law claim under the LEDL against defendant WBRP, is not justified based on the statutory and common law factors considered under 28 U.S.C. § 1367(c) and *Carnegie-Mellon*.

Accordingly, the West Baton Rouge Parish Council's Motion for Summary Judgment is granted in part and denied in part. The motion is granted as to the plaintiff's federal claim under the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.*, and that claim is dismissed.

Pursuant to 28 U.S.C. § 1367(c), the court declines to exercise supplemental jurisdiction over the plaintiff's state law claim under LSA-R.S. 23:312 against defendant WBRP. That claim will be dismissed without prejudice to the plaintiff re-filing her claim in state court as provided by 28 U.S.C. § 1367(d).

Baton Rouge, Louisiana, November 12, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE